IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSH ARMSTRONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-01281 |
| ) | Judge Aleta A. Trauger |
| USA AUTOMOTIVE PARTNERS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

The defendant has filed a Motion to Dismiss (Doc. No. 10) which, for the reasons set forth herein, will be granted.

**I.  PROCEDURAL HISTORY**

Plaintiff Josh Armstrong filed a Complaint (Doc. No. 1), asserting breach of contract and promissory estoppel claims against his former employer, defendant USA Automotive Partners, LLC ("USAAP"). He seeks compensatory damages and costs. (Complaint at 5–6.) Armstrong has also filed his signed offer letter ("Contract") (Doc. No. 1-1) and an unsigned separation agreement ("Separation Agreement") (Doc. No. 1-2). USAAP filed a Motion to Dismiss (Doc. No. 10) under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and in the alternative, under Rule 12(b)(6), with an accompanying Memorandum (Doc. No. 11) and the Declaration of Chase Eckert (Doc. No. 11-1). Armstrong has filed a Response (Doc. No. 19) and an accompanying Declaration (Doc. No. 19-1). USAAP has filed a Reply (Doc. No. 20) and a Business Entity Disclosure Statement (Doc. No. 13).[1]

---

[1] USAAP's Business Entity Disclosure Statement lists three members—one person and two LLCs, which, in turn, collectively list five members. (Doc. No. 13 at 3.) Chase Eckert is not

## II.    STANDARD – RULE 12(b)(2)

The court's analysis of a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction involves burden-shifting. "[A]fter the plaintiff makes a *prima facie* case for personal jurisdiction, which can be done 'merely through the complaint,' the burden shifts to the defendant," who must support his motion with evidence. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)). "The burden then returns 'to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (quoting *Peters*, 40 F.4th at 437–38 (some internal quotation marks omitted)). If the court does not hold an evidentiary hearing—as here[2]—"the plaintiff only has to make a *prima facie* case of personal jurisdiction." *Dorn v. Dominique*, No. 22-5620, 2023 WL 2543714, at *4 (6th Cir. Mar. 14, 2023) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). This "burden is relatively slight." *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *2 (6th Cir. May 8, 2024) (internal quotation marks omitted) (quoting *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 901 (6th Cir. 2017)). "The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh 'the controverting assertions of the party seeking dismissal.'" *Ingram Barge Co. v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)).

---

listed. Yet Chase Eckert states in his Declaration that he is a member of USAAP. (*See* Eckert Decl. ¶ 1 ("I am a Member of Defendant USA Automotive Partners, LLC (USAAP).").) Either Mr. Eckert or the Business Entity Disclosure Statement is incorrect.

[2] The defendant requests an evidentiary hearing only if the court finds that the plaintiff has made out a *prima facie* case of personal jurisdiction. (Doc. No. 11 at 7 n.2.) The plaintiff has not requested discovery or a hearing.

However, the court "may consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citations omitted).

## III. FACTS[3]

USAAP is a Texas LLC with Texas headquarters that operates three car dealerships in Texas. (Complaint ¶¶ 1–2; Eckert Decl. ¶ 3; Armstrong Decl. ¶ 14.) During the relevant timeframe, it was not licensed to do business in Tennessee and had no office, property, or employees[4] in Tennessee. (Eckert Decl. ¶ 4.) In May 2022, after almost three years of negotiating, USAAP hired Armstrong, who resided in Tennessee at the time, as its Business Development Center Director, to oversee its three car dealerships, manage "nationwide sales activities" by internet and phone, manage six sales and service representatives, increase car sales, and improve contracting processes. (Complaint ¶¶ 1, 4, 9, 11, 13; Armstrong Decl. ¶¶ 11, 14; Eckert Decl. ¶ 5.)

So Armstrong quit his job in Tennessee and "began working at Defendant's Texas headquarters[,] . . . traveling weekly to Texas for work." (Complaint ¶ 21.) According to Armstrong, under the Contract, he was provided moving expenses and an apartment in Texas, and "[i]t was understood that in performing under the contract, Plaintiff would routinely be traveling from his home in Williamson County, Tennessee to [USAAP]'s Texas headquarters . . . during the workweek." (*Id.* ¶ 13.) USAAP paid for Armstrong's travel. (*Id.* ¶ 9.) Armstrong's "normal travel routine" was the following: he would fly from Tennessee to Texas on Sunday, work in Texas Sunday to Thursday, and return to Tennessee on Friday. (*Id.* ¶ 8.) Stated differently, he "commute[d] regularly" between Tennessee and "USAAP's Texas office in order to perform [his]

---

[3] The facts are drawn from the Complaint's undisputed allegations, the plaintiff's Declaration (even if disputed), and the Eckert Declaration's undisputed factual assertions. The court views the facts in the light most favorable to the plaintiff.

[4] That is, other than Armstrong, to the extent he worked from Tennessee.

3

Case 3:24-cv-01281    Document 24    Filed 05/27/25    Page 3 of 17 PageID #: 142

job." (*Id.* ¶ 6.) "Typically, [Armstrong] would perform [his] duties while in Texas at USAAP's headquarters[.]" (*Id.* ¶ 10.) In addition, Armstrong alleges, USAAP expected him to, and he did, "from time-to-time" respond to work calls, text messages, and emails from Tennessee. (*Id.* ¶¶ 10, 12–13.)

The plaintiff does not clarify how long his commuting arrangement persisted or how long the defendant paid for it.[5] The Contract states only that "[m]oving expenses will be discussed to accommodate a sixty to ninety day moving transition." (Contract at 2.) However, the Complaint alleges both that USAAP "provided for moving expenses" and that "as part of the contract [USAAP] made arrangements to pay expenses in connection with Plaintiff's travel from Tennessee to Texas on a routine." (Complaint ¶¶ 4, 13.) Further confusing matters, Armstrong states that his routine travel, which USAAP paid for, "became a specific item of the contract." (*See* Armstrong Decl. ¶¶ 6–9 (referring to the Contract generally).) But because the only contractual provision the plaintiff could plausibly refer to mentions only a sixty-to ninety-day "moving transition," it is consistent with—if not implied by—the plaintiff's filings that his routine travel, and USAAP's reimbursement thereof, lasted only as long as the Contract's stated transition period, as the defendant's declarant represents. (*See* Eckert Decl. ¶ 6 ("Armstrong was expected to relocate from Tennessee to Texas, following a sixty to ninety day transition period. *During that interim period*, Armstrong commuted to Texas during the workweeks and stayed in Company-provided housing that was paid for by USAAP." (emphasis added)).) However, disregarding ambiguities and

---

[5] The plaintiff's Response brief states that, "for approximately 14 months, Defendant regularly paid for interstate travel to and from the forum for Mr. Armstrong." (Doc. No. 19 at 17 (citing Armstrong Decl. ¶¶ 8–9).) The court cannot credit this unsworn statement in the plaintiff's brief. *Accord Barrett v. Lombardi*, 239 F.3d 23 (1st Cir. 2001) ("[A]llegations in a lawyer's brief . . . are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts."). And the cited portions of the Declaration do not support the contention that Armstrong commuted for the duration of his employment. (*See* Armstrong Decl. ¶¶ 8–9.)

4

construing the facts in the light most favorable to the plaintiff, the court will presume that the defendant paid for the plaintiff to fly from Texas to Tennessee every weekend of his employment.

In July 2023, roughly fourteen months into his employment, Armstrong was told that he would be terminated and was asked to sign the Separation Agreement. (Complaint ¶ 23.) But the Separation Agreement offered him only three weeks' salary, whereas, Armstrong argues, according to the Contract and USAAP's representations, he was guaranteed another ten months' salary and commissions. (*Id.* ¶¶ 15–20, 23–24; Separation Agreement ¶ 3(a).) Instead of signing the Separation Agreement, Armstrong sued. (Complaint ¶ 24.)

## IV. DISCUSSION

The court finds that it cannot, consistent with due process, exercise specific personal jurisdiction over the defendant. The defendant did not purposefully avail itself of the privilege of acting in Tennessee merely by paying for the plaintiff's routine, personal travel to Tennessee, where the plaintiff sometimes worked remotely outside regular business hours. Nor do the plaintiff's claims arise out of, or relate to, the defendant's transfer of vehicles to a Tennessee municipality. Accordingly, the court will dismiss this case without prejudice and will not reach the merits.

### A. Personal Jurisdiction[6]

If a court lacks personal jurisdiction, "it is 'powerless to proceed to an adjudication.'" *In re Vista-Pro Auto., LLC*, 109 F.4th 438, 444 (6th Cir. 2024) (quoting *Ruhrgas AG v. Marathon Oil*

---

[6] The plaintiff has not met his burden to allege facts supporting his invocation of diversity jurisdiction because the Complaint does not identify the defendant's members or state their citizenship. *See Akno 1010 Mkt. St. St. Louis Miss. LLC v. Pourtaghi*, 43 F.4th 624, 626–27 (6th Cir. 2022) (noting that the burden to establish citizenship lies with the party asserting diversity jurisdiction and that LLCs have the citizenship of their members and sub-members). Nor can the court satisfy itself that the parties are completely diverse given the discrepancy, discussed above, between the defendant's Business Entity Disclosure Statement and the declaration it has submitted, which identifies an additional member without stating his citizenship. Because the court finds that

5

*Co.*, 526 U.S. 574, 584 (1999)). Personal jurisdiction can be general or specific. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (citations omitted). "General jurisdiction exists when the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." *Sullivan*, 79 F.4th at 660 (citation and internal quotation marks omitted). Both parties agree that the court lacks general jurisdiction over the defendant (*see* Doc. No. 11 at 9–10; Doc. No. 19 at 12), so the court will address only specific jurisdiction. *Accord Parker*, 938 F.3d at 839.

Specific jurisdiction has to do with the "affiliation between the forum and the underlying controversy.'" *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For the court to exercise jurisdiction over the defendant in diversity cases, both the forum state's long-arm statute and federal constitutional due process must be satisfied. *Sullivan*, 79 F.4th at 660–61 (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012)). Tennessee's long-arm statute "extends to the fullest extent permitted by the United States constitution," so the court need only consider whether exercising jurisdiction over the defendant comports with federal due process. *AMB Media*, 2024 WL 2052151, at *2 (citations omitted).

The court must determine whether there are sufficient minimum contacts between the defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit employs a three-part test to determine whether the

---

it lacks personal jurisdiction over the defendant, it need not dwell on subject matter jurisdiction. *See Ohio v. Yellen*, 53 F.4th 983, 990 n.2 (6th Cir. 2022) ("[T]here is no mandatory sequencing of jurisdictional issues." (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted))).

6

court's exercise of personal jurisdiction comports with due process, as originally set forth in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968). *See Air Prods.*, 503 F.3d at 550 (quoting *Mohasco*, 401 F.2d at 381).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Peters*, 40 F.4th at 441 (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016)).

### 1. *Purposeful availment*

The plaintiff alleges several facts in support of personal jurisdiction, including that the defendant first contacted the plaintiff and then spent three years recruiting him, all while the plaintiff lived in Tennessee. (Complaint ¶ 4; Armstrong Decl. ¶¶ 4–5.) And the defendant paid for the plaintiff's regular weekend travel back to Tennessee, where he was expected to, and sometimes did, take work calls and answer emails and text messages. (Complaint ¶ 4; Armstrong Decl. ¶¶ 9–13.)

The court begins with purposeful availment, the "*sine qua non* for *in personam* jurisdiction.*" Air Prods.*, 503 F.3d at 550 (quoting *Mohasco*, 401 F.2d at 381–82). "[P]urposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *MAG IAS Holdings*, 854 F.3d at 900 (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). "[B]ut 'the plaintiff cannot be the only link between the defendant and the forum.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Put another way, the specific

jurisdiction inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation,'" "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284–85 (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984); and then citing *Int'l Shoe*, 326 U.S. at 316, 319). Rather, the defendant itself "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (alteration in original)). This requires a showing "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there," *id.* at 359 (quoting *Walden*, 571 U.S. at 285) (alteration in original), and in so doing "create[ed] continuing relationships and obligations with citizens of another state." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

In this case, the court is guided by the Supreme Court's admonitions that the defendant's "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (quoting *Keeton*, 465 U.S. at 774), and that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

First, while the court acknowledges the plaintiff's argument that it was the defendant who reached out to him, while he was in Tennessee, and they negotiated their contract for three years while the plaintiff lived in Tennessee. These contacts are relevant but not dispositive. *See Air Prods.*, 503 F.3d at 551 ("Factors to consider are 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" (quoting *Burger King*, 471 U.S. at 479)). In this case, while the defendant reached into Tennessee to recruit the plaintiff, it is undisputed that the contract at issue required the plaintiff to move to Texas for work—even if that fact is unstated in the Contract itself. As the defendant argues, "'the

real object of the business transaction' between the Parties was for Armstrong to perform his work for USAAP in Texas, not Tennessee." (Doc. No. 20 at 2 (quoting *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 979 (6th Cir. 1992)).)

Second, for purely personal reasons, and without benefit to the defendant, Armstrong routinely returned to Tennessee on weekends, with the defendant paying for his travel. While in Tennessee, outside of normal business hours, he sometimes took work calls and answered emails and text messages. However, nothing in the record suggests that the defendant required, requested, or benefited from this arrangement. Nothing in the record suggests that the defendant would have cared if the plaintiff had spent his weekends, instead, in Texas, Kentucky, or Mexico—assuming it would not have cost more.

And, while the court will not belabor this point, the plaintiff stretches the facts beyond the realm of plausibility by referring to a "hybrid work schedule [that] required him to continue to do his job from Tennessee." (Doc. No. 19 at 15.) The plaintiff allegedly commuted every week to Texas to work in person and returned to Tennessee on Fridays, such that over the weekend (and perhaps for some part of Fridays), he, from "time-to-time," took work calls and answered work emails. (Armstrong Decl. ¶¶ 8, 12–13.) This does not sound to the court like a "hybrid" work schedule, but rather the common experience of many fully in-office employees. As the plaintiff describes his situation, "[a]s a salaried employee it was expected that from time-to-time [he] would need to participate in . . . calls . . . remotely from [his] home." (*Id.* ¶ 13.) *Accord DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 842 (6th Cir. 2024) (referring to a "weekly schedule of three days in-office and two days at-home" as a "hybrid work arrangement"). Further, if the plaintiff was "required" to work from Tennessee, it was only because he chose to return to Tennessee. In the

9

same vein, most employers could be said to require their employees to smoke outside—that is, only if the employees smoke in the first place.

The defendant analogizes to *Conti v. Pneumatic Products Corporation*, where the Sixth Circuit affirmed the district court's dismissal for lack of personal jurisdiction over the plaintiff's out-of-state former employer. (*See* Doc. No. 11 at 7–10.) The plaintiff, who lived in Ohio, was hired to work in the defendant Delaware corporation's Florida headquarters. *Conti*, 977 F.2d at 979–80. The plaintiff negotiated, and received, his offer letter in Ohio. *Id.* at 982. At the plaintiff's request, he was allowed to work from Ohio for one month before moving to Florida, where he worked for roughly three months before he was terminated. *Id.* at 980. The Sixth Circuit found that the defendant's contacts with Ohio were "random, fortuitous and attenuated" and that the exercise of personal jurisdiction would not have complied with due process. *Id.* at 982. The facts in *Conti* are indeed similar to this case, although there the plaintiff worked from the forum state continuously for a period, and then elsewhere. Here, the plaintiff commuted between the defendant's headquarters in Texas and the forum state, apparently for the duration of his employment, and he did some work, throughout this time, in the forum state. Moreover, the defendant paid for this travel.

The plaintiff further distinguishes *Conti* by correctly noting that there the defendant employer did not solicit the plaintiff's employment; rather, the plaintiff submitted his resume to a third-party recruiting agency. (*See* Doc. No. 19 at 14 (citing *Conti*, 977 F.2d at 979, 982).) By contrast, in this case, the defendant's CEO recruited the plaintiff, whom he knew to be living in Tennessee, for three years. (*See id.*) However, as the court noted above, this is not dispositive. Rather, "a court must undertake a holistic analysis of the totality of the circumstances surrounding the prior negotiations and contemplated future consequences, the terms of the contract, and the

10

parties' actual course of dealing." *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 985–86 (M.D. Tenn. 2024) (Crenshaw, J.) (citation omitted). As our sister court has noted, a "careful reading" of *Conti* shows that "the case did not turn on whether the plaintiff or defendant made the initial contact," but rather "on the court's evaluation of the intended future consequences that are 'the real object of the business transaction.'" *Carlisle v. Winona Health Servs.*, No. 2:11-CV-179, 2012 WL 2120714, at *5 (E.D. Tenn. May 31, 2012) (quoting *Conti*, 977 F.2d at 982).

Further, in cases in which an in-state employer sued an out-of-state defendant, "the Sixth Circuit has considered whether the out-of-state defendant 'created a connection' with the forum state that was 'intended to be[] ongoing in nature' as a result of the remote employment relationship." *Dugger v. Honeywell Int'l, Inc.*, No. 1:21-CV-00892, 2021 WL 5961624, at *8 (N.D. Ohio Dec. 16, 2021) (quoting *AlixPartners*, 836 F.3d at 551); *accord Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (finding an insufficient connection where the out-of-state defendant contracted with an Ohio business "not because [the defendant] sought to further its business and create 'continuous and substantial' consequences there," but rather simply because the plaintiff chose to be headquartered there). In this case, there was little to no ongoing connection between the defendant and the forum state because the plaintiff worked, almost entirely, out of Texas and returned to Tennessee, at his sole discretion, to do work that did not advance the defendant's interests in Tennessee.

The plaintiff analogizes his situation to cases that do not concern remote work or disputes between employees and their employers, and that involve significantly more contact between the defendant and the forum state than in this case. (*See* Doc. No. 19 at 14–15 (first citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901 (6th Cir. 1988); and then citing *Gateway Press, Inc. v. LeeJay, Inc.*, 993 F. Supp. 578 (W.D. Ky. 1997)).) In *Lanier*, the object of the defendant's contact

11

with Michigan, the forum state, was to have "ongoing, far-reaching consequences in the Michigan dental services market." *Lanier*, 843 F.2d at 911. Likewise, in *Gateway Press*, the out-of-state corporation created an ongoing relationship by contracting with a Kentucky printer for $170,000 of work to be designed and manufactured in Kentucky pursuant to a contract with a Kentucky choice of law provision. *Gateway Press*, 993 F. Supp. at 581. These cases have little relevance here.

While it appears that neither the Supreme Court nor the Sixth Circuit has addressed purposeful availment where an in-state, remote worker has sued his out-of-state employer where the worker lives, several district courts in the Sixth Circuit have. In this context, courts within this circuit have found instructive a set of non-exhaustive and non-dispositive considerations, including:

> whether (1) the defendant solicited the employment of the plaintiff in the forum state; (2) the plaintiff worked predominantly from within the forum state; (3) the plaintiff was a high-level employee in the defendant's business; (4) the plaintiff signed the employment contract in the forum state; (5) the defendant had knowledge of, and 'facilitated,' the plaintiff's remote employment; and (6) the work the plaintiff performed in the forum state advanced the defendant's business interests in the forum state.

*Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 511 (E.D. Ky. 2019).

Thus, in *Hall*, for example, the court found that the defendant-employer's contact with Kentucky was not the result of the plaintiff's unilateral conduct because the employer "recruited Plaintiff in Kentucky, sent a signed contract to Plaintiff in Kentucky, and engaged in a close working relationship with Plaintiff in Kentucky for a substantial period of time." *Hall*, 359 F. Supp. 3d at 512. Crucially, Hall's employer hired him "with the express understanding and agreement that her work would primarily be performed remotely from . . . Kentucky." *Id.* at 503. In fact, the plaintiff lived in Kentucky for the duration of her employment and "performed the 'vast majority'" of her work while in Kentucky. *Id.* at 510. The plaintiff's living in Kentucky was

12

"specifically bargained for in the negotiation of the employment contract." *Id.* Moreover, the defendant sent the plaintiff equipment that allowed the plaintiff to manage the Ohio store remotely from her Kentucky home. *Id.* Other courts have found purposeful availment where the defendant had established similarly robust and continuous contacts with the forum state.[7]

By contrast, courts have emphasized that merely working remotely from the forum state with the employer's blessing does not suffice for purposeful availment. For example, in *Phillips v. Persons Services Corporation*, the plaintiff had worked as a project manager in the defendant's Alabama headquarters. No. 2:20-CV-2392-MSN-ATC, 2021 WL 5277481, at *1 (W.D. Tenn. Mar. 31, 2021). When the plaintiff decided to move to Tennessee, the defendant permitted him to work at various jobsites in Mississippi, Alabama, and Florida, and do other work from his home in Tennessee. *Id.* While working from Tennessee, the plaintiff spoke daily with the defendant's employees and received paychecks and a monthly vehicle allowance. *Id.* at *2. The court found that the plaintiff had not met his *prima facie* burden of showing that the defendant purposefully availed itself of the privilege of conducting activities in Tennessee, in part, because, "although [the

---

[7] *See, e.g.*, *Gronski*, 2025 WL 97617, at *1, 5 (finding purposeful availment where the in-state plaintiff worked fully remotely from the forum state and had weekly meetings with his supervisor, a defendant, who earned commissions based on sales the plaintiff made while working in the forum state); *Davidson v. Nguyen-Sperry*, No. 2:22-CV-4376, 2023 WL 8021253, at *5 (S.D. Ohio Nov. 20, 2023) (finding purposeful availment where an out-of-state company established an LLC with the in-state plaintiff, who worked full-time from the forum state, and where the defendant supervised several other Ohioans, registered in Ohio as a foreign limited liability company, and engaged in millions of dollars of business with an Ohio customer); *Goff v. Brook-Hollow Cap., LLC*, No. 3:12-0713, 2013 WL 6051035, at *5 (M.D. Tenn. Nov. 15, 2013) (Sharp, J.) (finding purposeful availment where, in the forum state: the employee signed his employment contract, resided for the duration of his employment, and did most of his work, and his employer paid payroll taxes and made sales pitches); *Hige v. Turbonetics Holdings, Inc.*, 662 F. Supp. 2d 821, 825, 832 (E.D. Mich. 2009) (finding purposeful availment where the plaintiff signed his employment contract in the forum state, conducted one-half of his work in the forum state—even though, at company expense, he commuted to, and stayed in, California the other half of the time, where he managed the companies' operations—and some of his duties involved establishing business in the forum state).

plaintiff] worked partly from his home in Tennessee for approximately the last one and a half years of his employment, he did so of his own volition and not at the direction of the defendant." *Id.* at *2, 5. The court rejected the plaintiff's "core . . . argument . . . that because he performed some work for Defendant remotely from his home in Shelby County, Tennessee," the court had specific personal jurisdiction over the defendant. *Id.* at *3.

Other courts have similarly emphasized that the plaintiff's uniliteral decision to reside in the forum state while working remotely does not support the conclusion that the defendant has engaged in a "deliberate undertaking" of "actions by the defendant *himself* that create a substantial connection with the forum state." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003). *See, e.g.*, *Carpenter v. S. Airways Express*, No. 2:21-CV-568, 2021 WL 5937749, at *5–6 (S.D. Ohio Dec. 16, 2021) (collecting cases and holding that the court could not exercise personal jurisdiction over an out-of-state airline merely because it employed the plaintiff, who worked remotely from Ohio as a customer service representative, where there was "no allegation that [the defendant] affirmatively recruited [the plaintiff], asked or required her to work from Ohio, came to Ohio to meet with her, supplied her with materials or equipment to remotely conduct her work from Ohio, or tasked her with extending [its] business in Ohio," and concluding that the plaintiff's "unilateral decision to reside in Ohio while working in a virtual role does not support the conclusion that Defendants engaged in any overt actions connecting them to Ohio.") Rather, an employee's decision to live in a particular state, for her own convenience, is the kind of "unilateral activity" of another party that does not, without more, constitute purposeful availment by the defendant. *Accord Burger King*, 471 U.S. at 475.

In any event, in this case, the plaintiff barely worked in the forum state. Rather, he returned to Tennessee on weekends for personal reasons, where he sometimes took calls and responded to

14

work messages but where he did not advance the defendant's business interests. The defendant has not thereby availed itself of the privilege of doing business in Tennessee, and the court need not consider the additional *Mohasco* requirements to conclude that it cannot exercise personal jurisdiction over the defendant on the foregoing bases.

2. *The plaintiff's additional grounds for jurisdiction*

Separately, the plaintiff alleges that this court has personal jurisdiction over the defendant "because it has targeted Tennessee customers for sales of fleet vehicles, selling multiple vehicles to government entities in Tennessee—for example, the White House, Tennessee, Police Department." (Complaint ¶ 5.) Because this allegation seemingly does not implicate the plaintiff at all, the defendant reasonably understood the plaintiff to claim that this court has *general* personal jurisdiction over it and has responded accordingly. (*See* Doc. No. 11 at 9–10.) Indeed, absent any connection to the plaintiff's claims, let alone to the plaintiff himself, the Complaint's causes of action could not plausibly arise from the defendant's supplying vehicles to a Tennessee police department, which would be required for the court to exercise specific jurisdiction over the defendant in this case.

In any event, as the court mentioned, the plaintiff concedes that the court lacks general jurisdiction over the defendant. Instead, the plaintiff's Response adds new facts to support his claim for specific jurisdiction. The plaintiff argues that his "hybrid work schedule . . . benefitted Defendant by allowing Mr. Armstrong to find business opportunities in new markets like with the White House, Tennessee Police Department." (Doc. No. 19 at 15 (first citing Armstrong Decl. ¶¶ 11–14; and then citing Complaint ¶ 5).) This new basis for jurisdiction has several problems. First, the plaintiff has nowhere explained how his weekends in Tennessee, when he sometimes took calls and sent emails, "allow[ed]" him to find business opportunities in Tennessee. Putting that issue aside, significantly, the plaintiff does not actually state that he *did* find, or even looked

15

for, any business opportunities in Tennessee. Moreover, the plaintiff does not state that he was involved with the defendant's supplying cars to the White House, Tennessee Police Department or the sale to, or development of, any business with any Tennessee customer. The plaintiff's brief states only that spending the weekends in Tennessee "allow[ed him] to find business opportunities *like with* the White House, Tennessee, Police Department." (Doc. No. 19 at 15 (emphasis added).) The court could overlook this vague statement if the plaintiff's Complaint or Declaration clarified matters, but they do not. As noted above, the plaintiff cites both the Complaint and his Declaration to support his claim that his hybrid work schedule benefitted the defendant by allowing him to increase business in Tennessee. The paragraph of the Complaint the plaintiff cites for support states only that the defendant has sold cars to the White House Police Department. (Complaint ¶ 5.) Of the four paragraphs of the plaintiff's Declaration he cites in support, only one is remotely on point. It states in full:

> My role was [sic] included both business development in the Texas area for USAAP as well as, [sic] required me to implement efficiency improvements in the existing processes and procedures for managing a large government contract to outfit and upfit various municipalities, cities, towns, and federal law enforcement and municipal vehicle fleets. My understanding is that the White House, Tennessee Police Department's upfitting fell within the purview of this government contract.

(Armstrong Decl. ¶ 11.) This statement provides no support for the plaintiff's contention, in his brief, that he found new business opportunities in Tennessee. Rather, it appears that part of the plaintiff's role was to improve the defendant's processes for managing government contracts. Under one such contract, the plaintiff states that it is his "understanding" that the defendant provided cars to the White House Police Department. Crucially, however, even if the plaintiff's understanding is correct, the plaintiff's role as described appears entirely remote from the sale of cars to Tennessee customers. Rather, White House was one among "various municipalities" that

16

received vehicles under a contract whose management processes and procedures the plaintiff was hired to improve—from Texas.

Thus, even assuming that the defendant purposefully availed itself of the privilege of doing business in Tennessee by providing vehicles to one Tennessee municipality as part of a government contract, the plaintiff has not alleged sufficient facts to meet even the "lenient standard" the Sixth Circuit imposes for a cause of action to arise from the defendant's contact, in this manner, with the forum. *AlixPartners*, 836 F.3d at 552 (quoting *Air Prods.*, 503 F.3d at 553). The court finds that the plaintiff's allegations that the defendant supplied vehicles to a Tennessee municipality, among various others in other states, and to the federal government, and that it is the plaintiff's "understanding" that this was pursuant to a contract whose efficiency the plaintiff improved, do not support the plaintiff's jurisdictional argument.

## V. CONCLUSION

Even though the plaintiff need only make out a *prima facie* jurisdictional case, taking the foregoing into consideration, the court finds he has not met this burden and therefore the court cannot, consistent with due process, exercise jurisdiction over the defendant. Neither party has requested that the court transfer, rather than dismiss, this case for want of jurisdiction. Because the court declines to transfer *sua sponte*, it will dismiss this case without prejudice.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge